THEODORE RATCLIFF

*v.*

STATE COMPENSATION COMMISSIONER AND
E. I. DUPONT DENEMOURS & COMPANY

(No. 12127)

Submitted January 10, 1962. Decided February 13, 1962.

*James G. Jeter, Jr.,* for appellant.

*W. Victor Ross, Spilman, Thomas, Battle & Klostermeyer, Fred L. Davis, McCluer, Davis, McDougle, Stealey & Morris,* for appellees.

GIVEN, JUDGE:

The claimant, Theodore Ratcliff, filed his application with the State Compensation Commissioner, claiming the right to benefits based on the occurrence of an occupational disease other than silicosis. The Commissioner granted an award for "total temporary disability benefits from February 7, 1959 through June 6, 1960". The Workmen's Compensation Appeal Board reversed the order of the Commissioner, holding that the pertinent statutory provision "clearly excludes from compensability mere aggravation of disease other than silicosis".

Claimant, a boiler maker and welder, was employed by E. I. duPont deNemours & Company from December 10, 1956 to February 7, 1959. A material part of his assigned duties was welding in the inside of metal tanks, where he was subjected to and inhaled welding fumes. He became ill in January, 1959, and has not worked since February, 1959. Claimant, prior to his employment with E. I. duPont deNemours & Company, was engaged in the same general type of welding with other employers in and out of the State. In view of the finding of the Occupational Diseases Medical Board, and the nature of the question now involved, details of the former employment appear immaterial.

The problem involved is made to clearly appear by reference to certain actions in proceedings before the Workmen's Compensation Appeal Board. In *Leevale Collieries, Inc. v. Frank Peayatt,* Appeal No. 4049, decided June 6, 1953, an award was allowed for the aggravation of a pre-existing eczema, wherein Mr. Moler, dissenting, stated that in his opinion "the legislative intent to make a difference between silicosis as an occupational disease and all other occupational diseases is clearly apparent from the face of the statute and that since compensation for perceptible aggravation of silicosis is expressly included, the omission or any similar reference to aggravation of any other occupational disease in the same statute is too significant to be overcome by applying the analogy of treatment of silicosis and injury cases * * *".

In a later proceeding, *Union Carbide Corporation v. State Compensation Commissioner and Clifford C. Moss,* Appeal No. 5540, decided August 10, 1959, involving a claim for aggravation of an occupational disease other than silicosis, the appeal board denied compensation, holding that mere aggravation of an occupational disease other than silicosis was not compensatory, saying: "We concur with the reasoning in the dissenting opinion of Mr. Moler [in the *Leevale Collieries, Inc.,* case] and hold that the statute clearly excludes from compensability mere aggravation of disease other than silicosis. Therefore, the Commissioner is reversed and the claim is held to be non-compensable."

In the instant proceeding the Occupational Disease Medical Board found that "The claimant has suffered an aggravation of a pre-existing chronic bronchitis, bronchiectasis, pulmonary fibrosis and emphysema". The finding of the board that claimant suffered only an aggravation of a pre-existing disease or diseases was clearly supported by the evidence, and is not here questioned. Therefore, the only question now involved is the one raised by the action of the appeal board, whether the mere aggravation of a pre-existing dis-

ease other than silicosis entitles a claimant to benefits under the pertinent statutory provisions.

Code, 23-4-1, as amended, insofar as appears material here, provides: "* * * For the purposes of this chapter the terms 'injury' and 'personal injury' shall be extended to include silicosis and any other occupational disease as hereinafter defined, and the commissioner shall likewise disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the last quarter in which such employees have been exposed to the hazard of silicon dioxide dust or to any other occupational hazard, and have contracted silicosis or other occupational disease, or have suffered a perceptible aggravation of an existing silicosis, in this State in the course of and resulting from their employment * * *".

"For the purpose of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of silicosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk con-

nected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.''

It is very significant, we think, that the Legislature specifically provided for payment of benefits where the employee suffers ''a perceptible aggravation of an existing silicosis'', but made no provision for payment of benefits as to an aggravation of any other occupational disease. It is also significant that the statute requires that an occupational disease other than silicosis ''must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence''. The intention of the Legislature to deal differently in this respect as to silicosis and other occupational diseases is further accentuated by the last paragraph of Code, 23-4-1, as amended, dealing with such diseases contracted before the first day of July, 1949, the effective date of the Act defining occupational diseases other than silicosis, that is, such existing disease should be deemed to have been ''contracted'' if it had on the first day of July, 1949, ''developed to such an extent that it can be diagnosed as an occupational disease''. In other words, the intention is clear that only a disease then existing and could then be ''diagnosed'' as an ''occupational disease'' would be considered as having been ''contracted'' and afford a foundation for claims for such benefits.

The correctness of the conclusion reached in the instant case by the appeal board is further emphasized by the provisions of Code, 23-4-8(c), 8(f), as amended. Section 8(c) requires the Silicosis Medical Board to make a specific finding as to whether the exposure was sufficient to ''have perceptibly aggravated an existing silicosis'', while Section 8(f) does not specifically, or by necessary implication, require the Occupational Diseases Medical Board to make any finding as to an aggravation, though specific findings of the board are required by Section 8(f).

The statutory provisions appear to so clearly furish an answer to the question posed that any right or duty to attempt any interpretation thereof may be doubted. If, however, an interpretation be deemed proper, the same conclusion necessarily follows. Here the Legislature has clearly provided for benefits based on "aggravated" silicosis, but has not made an provision as to "aggravation" of any other occupational disease. A very familiar rule should control. It is stated in the following language in *Layne, Mayor, etc. v. Hayes,* 141 W. Va. 289, 297, 90 S. E. 2d 270: "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies. *Harbert v. The County Court of Harrision County,* 129 W. Va. 54, 39 S. E. 2d 177; *State ex rel. Downey v. Sims,* 125 W. Va. 627, 26 S. E. 2d 161; *Taylor v. Taylor,* 66 W. Va. 238, 66 S. E. 690 * * *".

The order of the Workmen's Compensation Appeal Board appealed from is affirmed.

*Affirmed.*