408 P.2d 145

**Isaac GARCIA and Pola Garcia, his wife,
Plaintiffs-Appellees,**

**v.**

**COLOR TILE DISTRIBUTING COMPANY,
a foreign corporation, Defend-
ant-Appellant.**

**No. 7687.**

Supreme Court of New Mexico.

Nov. 22, 1965.

Threet, Threet, Glass & King, Albuquerque, for appellant.

Charles E. Barnhart, Albuquerque, for appellees.

CARMODY, Chief Justice.

. The defendant in the trial court has appealed from a judgment rendered against it by the district court sitting without a jury. With one exception hereinafter discussed, the appeal relates entirely to an at-

tack on certain of the court's findings and the contention that the court failed to adopt requested findings to the contrary. For the reasons hereafter stated, we affirm the judgment of the trial court.

Plaintiffs (husband and wife) contracted with the defendant to have laid some Armstrong's Hydrocord Linoleum in a portion of the plaintiffs' house. Prior to the installation of the linoleum, the plaintiffs placed a quarter-inch plywood covering over the existing concrete floor. This was done after consultation with the employees of the defendant. The defendant then completed the installation of the linoleum and guaranteed it, but within a matter of days the floor began to buckle.

Without setting out the findings which are attacked, suffice it to say that the defendant claims that the undisputed evidence as to the size of concrete nails used to affix the plywood to the concrete base was to the effect that the defendant instructed the plaintiffs to use three-quarter-inch nails, not five-eighths-inch nails, maintaining that if the plaintiffs had done so the plywood would have adhered to the concrete surface and no buckling would have resulted. In this same connection, the defendant also attacks the trial court's finding that the sole cause of the buckling was the fact that water would be drawn through the concrete, thereby causing a separation of the plywood plies and that this in turn would cause the linoleum to buckle.

The trial court's finding was to the effect that the sole cause of the failure of the floor was the negligence of the defendant, whereas the defendant claims that the sole cause was the faulty installation of the plywood subflooring.

■ Before proceeding to the disposition of the defendant's basic attack on the findings, we would observe that there is no evidence that the plywood plies actually separated, or that the linoleum was not proper. Such statements were in the nature of evidentiary findings and were in no sense necessary for the trial court's decision. The making of such findings, however, does not require a reversal if there remain sufficient findings upon which to sustain the judgment. See Koeber v. Apex-Albuq Phoenix Express, 1963, 72 N.M. 4, 380 P.2d 14, 29 A.L.R.3d 1358; Melfi v. Goodman, 1963, 73 N.M. 320, 388 P.2d 50; Board of County Com'rs of Dona Ana County v. Little, 1964, 74 N.M. 605, 396 P.2d 591; and Paulos v. Janetakos, 1939, 43 N.M. 327, 93 P.2d 989. It is implicit in the findings made by the trial court that the defendant knew, or should have known, that moisture would be drawn through the concrete and that this, in turn, would cause a buckling of the plywood unless the plywood was attached to the concrete with nails of sufficient length to hold it in place. Whether, in the process, the plies separated is of no consequence.

The defendant fully recognizes the burden placed upon it in attacking the findings of the trial court, but, in our judgment, the burden has not been overcome. Without restating the rule adopted in this jurisdiction and supported by cases almost without number, we are of the opinion that the ultimate findings made by the trial court are based upon substantial evidence. The length of the nails used was the principal source of controversy. Admittedly, all of the defendant's testimony was to the effect that the plaintiffs were instructed to use three-quarter-inch nails; nevertheless, there is evidence of a substantial nature to support the trial court's finding that the use of five-eighths-inch nails was verbally approved by defendant's agent. Therefore, defendant's attack is futile. A careful examination of the testimony discloses a conflict in the proof, the resolution of which is within the province of the trial court, and we will not disturb the judgment. This being so, it also follows from the rule of long standing that the findings requested by the defendant, in conflict with those found by the court, were properly denied.

The defendant also asserts that the trial court erred in making findings to the effect that the plaintiffs were not skilled or experienced in covering floors with linoleum, whereas the defendant's agents were experts in the field, and that therefore the plaintiffs were entitled to rely on the advice of the defendant's agents when they did the preparatory work in installing the plywood flooring. Here, again, we are satisfied, although admittedly the evidence is in conflict, that there was substantial evidence that the defendant, which held itself out as an expert, was negligent in proceeding with the installation of the linoleum after approving the use of nails which were too short for the intended purpose. Of course, the defendant could not be placed in the position of an insurer, but, nevertheless, having undertaken to render services in the practice of a skilled trade, it impliedly warranted that it would exercise such reasonable degree of skill as the nature of the service required. Although we have been cited to none and neither have we found any case directly in point, the following cases are sufficiently analogous to show that the degree of care necessarily required by one who undertakes to render services to another in the practice of a trade which is a result of acquired learning, or developed through special training and experience, is that which a reasonably prudent man, skilled in such work, would exercise. Such degree of care has been required of insurance agents, Hardt v. Brink (W.D.Wash.1961), 192 F.Supp. 879; house movers, Numon v. Stevens, 1956, 162 Neb. 339, 76 N.W.2d 232; soil testers, Gagne v. Bertran, 1954, 43 Cal.2d 481, 275 P.2d 15; X-ray operators, Ballance v. Dunnington, 1928, 241 Mich. 383, 217 N.W. 329, 57 A.L.R. 262; threshers, **Van Nortwick** v.

Holbine, 1901, 62 Neb. 147, 86 N.W. 1057; oil well "shooters," Jackson v. Central Torpedo Co., 1926, 117 Okl. 245, 246 P. 426, 46 A.L.R. 338; and restaurant operators, Louis Pizitz Dry Goods Co. v. Waldrop, 1939, 237 Ala. 208, 186 So. 151. See also Restatement (Second), Torts, § 299A; and compare Jackson v. Goad, 1963, 73 N.M. 19, 385 P.2d 279. Thus we are of the opinion that the ultimate findings made by the trial court were proper.

■ Lastly, the defendants urge that the plaintiffs failed to prove damages and that the court erred in granting the amount of damages awarded. The court awarded the plaintiffs the sum of $652.87, which was the total selling price of the linoleum as installed. As nearly as we can understand the argument in this connection, it proceeds in part on the basis that there was no evidence of cost of replacement and therefore the defendant claims there is no showing of the measure of the difference in value, citing as authority Montgomery v. Karavas, 1941, 45 N.M. 287, 114 P.2d 776. In the ordinary case, there might be merit to defendant's claim; but here, in addition to the oral testimony which was submitted to the court, there were certain photographs admitted in evidence, which, even to an inexperienced eye, showed that the linoleum would have to be completely torn up and discarded. When we consider that the suit was brought upon the basis of negligence, we are of the opinion that there was sufficient evidence of the damage to justify the court in rendering the judgment which it did. See Rutherford v. James, 1928, 33 N.M. 440, 270 P. 794, 63 A.L.R. 237 (overruled on other grounds in Reed v. Styron, 1961, 69 N.M. 262, 365 P.2d 912).

■ Also in connection with damages, the defendant claims that because Mrs. Garcia paid the sum of $100.00 to the defendant two days after the original installation, this amount must be deducted from the judgment, even though the contract, prior to the payment, had been assigned to a finance company. Here, again, although under some circumstances the claims of the defendant might have some validity, the remedy in a negligence action is not the "recovery back" of money paid, as defendant indicates. The measure of damages where destroyed or lost property has no real market value is the value of such property to the owner. Rutherford v. James, supra; Wilcox v. Butt's Drug Stores, 1934, 38 N.M. 502, 35 P.2d 978, 94 A.L.R. 726; McCallister v. Sappingfield, 1914, 72 Or. 422, 144 P. 432. See also Duka v. Hotel Associates, Inc., 1962, 23 Conn.Sup. 500, 185 A.2d 86; annotation, 12 A.L.R.2d 899, Damages—Property of No Market Value.

The judgment will be affirmed. It is so ordered.

NOBLE and COMPTON, JJ., concur.